**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:21-cr-00691-AGF |
| | ) | |
| ELIZABETH DEMBO, | ) | |
| | ) | |
| Defendant. | ) | |

### SENTENCING MEMORANDUM FOR DEFENDANT ELIZABETH DEMBO

COMES NOW Defendant Elizabeth Dembo, by and through her undersigned counsel, and for and in support of her request for a non-incarceration sentence, followed by a period of supervised release, states as follows:

### Introduction

Defendant has pleaded guilty to one count of obtaining a controlled substance by fraud, in violation of 21 U.S.C. §843(a)(3) and (d)(1). Defendant appears before this Court seeking a non-incarceration-based sentence and a period of supervised release.

### General Sentencing Provisions

■ **The Sentencing Guidelines**

A district court first determines the applicable sentencing range pursuant to the United States Sentencing Commission Guidelines. *Gall v. United States*, 552 U.S. 38, 39 (2007). In *United States v. Booker*, the Supreme Court determined that the Guidelines are advisory. 543 U.S. 220, 245-46 (2005).

United States Probation estimates an offense level of 8 and a criminal history score of I, recommending a Guidelines sentencing range of zero to six months. Defendant does not intend to oppose the +2 enhancement for abuse of a position of trust leveled pursuant to §3B1.3 (P.S.R.,

¶¶5 and 34) and accepts the estimated Guidelines of 8/I and the recommended advisory range of zero to six-months.

Since the applicable Guidelines range of zero to six months is in Zone A of the Sentencing Table, a sentence of imprisonment is not required under the Guidelines and as the defendant is a nonviolent, first-time offender, the Court should consider imposing a non-incarceration-based sentence (see U.S.S.G. §5C1.1).

■ **Support for a Downward Variance Pursuant to §3553**

After consulting the Guidelines, a sentencing court performs an "individualized assessment" of the situation. *Gall*, 552 U.S. at 50. This analysis is guided by reasonableness and an individualized application of the statutory sentencing factors listed in section 3553(a) of the United States Code, Title 18. See *Gall*, 552 U.S. at 46-47; *Kimbrough*, 552 U.S. at 113 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines.").

Section 3553(a) includes a list of "factors" a court is to consider when determining the appropriate sentence ("the § 3553(a) factors"). They are as follows:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law; and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established [by the Guidelines;]

(5)     any pertinent policy statements [issued by the Sentencing Commission;]

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

- **Elizabeth Dembo**

Elizabeth Dembo has several personal characteristics which, when analyzed under the framework of § 3553(a), support sentencing mitigation and a non-incarceration-based sentence.

- o **Family and Social History Considerations**

Elizabeth Dembo, known to family and friends as Lizzie, is a 38-year-old female. She is the daughter of Philip Dembo and Susan Michael. She has one brother and two stepsiblings and maintains a close relationship with her family.

Ms. Dembo was raised in St. Louis, Missouri (P.S.R., ¶16). After graduating high school, she attended Truman State University where she obtained a Bachelor of Science degree in Health Sciences with a minor focus in Biology (P.S.R., ¶59-60). She, then, attended St. Louis College of Pharmacy for her doctorate in Pharmacy (P.S.R., ¶61). While a student at St. Louis College of Pharmacy, Elizabeth received the Health Literacy Award. She also appeared on the Dean's List more than once for having at least a 3.5 grade point average for a given semester.

       o   **Depression, Mental Health, and Substance Abuse**

Despite her academic success, Ms. Dembo has struggled with her mental health and substance abuse issues since 2002, when while in high school, she was diagnosed with anxiety and depression (P.S.R., ¶54). She struggled with these conditions throughout high school, college, and then graduate school.

Ms. Dembo began experimenting with alcohol and drugs as early as her 20's, slightly after the onset of mental health issues in 2002. While originally prescribed Adderall and similar amphetamines, prescribed use turned into dependence and then abuse. Eventually Ms. Dembo developed a poly-substance abuse addiction, including use and abuse of prescription drugs (P.S.R., ¶56). This dependence and addiction continued throughout her time in graduate school and then into her career as a pharmacist, including her time at Olive Street Pharmacy. By the time she was at Olive Street, between 2015 to 2018, her marriage was falling apart (the divorce was finalized in 2016 (P.S.R., ¶49)), she was deeply unhappy at work, she was depressed, and she was heavily addicted to prescription drugs.  It was this drug use and addiction which motivated the crimes for which she appears before this Court.

       o   **Sobriety**

Ms. Dembo's arrest and prosecution have had a sobering effect on her. Ms. Dembo stopped taking the drugs to which she was addicted. She began drug abuse counseling (P.S.R., ¶57). Since late-2020 she has been receiving mental health counseling (P.S.R., ¶54). She even moved out of the geographic area to break all ties with her former friends and associates who may trigger her depression and drug use; in November 2020, Elizabeth moved to Fernandina, Florida, to be closer to her mother who is a major source of support and comfort and who has

greatly aided in her sobriety (see **Exhibit A** – Letter of Susan Dembo). Her mother describes an amazing amount of growth over the past year while at home in Florida. *Id.*

Since regaining sobriety, Ms. Dembo is described as responsible, demonstrating remorse, happy, on her way to the bright and vivacious woman [who] is her true self, and a woman who "accepts responsibility for her actions." (**Exhibit A**). As the Court can see from the attached letters (**Exhibits A, B, D, E &G**), Ms. Dembo has a tremendous amount of support from her friends and family, all of whom have been helping her through this case.

Recognizing that sobriety is a process and journey, and not a destination – that it will be a lifelong struggle – Ms. Dembo is proud to appear before this Court sober and healthy for sentencing.

      o  **New Employment**

While she justifiably lost her career because of her conduct, Ms. Dembo has nevertheless sought and obtained alternate employment. She is currently employed as a sales associate at Teak and Ivy Boutique and Go Fish Clothing and Jewelry in Fernandina Beach, Florida (P.S.R., ¶67, 68). She started working for Go Fish in December of 2020 and joined Teak and Ivy in August of 2021. Since her first day working at Go Fish, Ms. Dembo has received at least four raises and has been given more responsibilities such as managing their social media. In addition to her raises at Go Fish, Ms. Dembo has received one raise at Teak and Ivy. She remains employed and working hard to rebuild her life. Both of her bosses have written glowing recommendations for her describing her as "calm, confident, intelligent, and honest…ready for the next challenge" (**Exhibit C**) and a hard worker who fulfills the duties of the job (**Exhibit F**).

    o   **Acceptance of Responsibility**

In addition to entering a plea admitting her conduct, Ms. Dembo's friends and family describe her acceptance and remorse for the actions she took (see **Exhibit A –** "Lizzy has apologized and show remorse over the last year…"**; Exhibit B** – "Lizzy has owned it. Has apologized to us.").

■ **The conviction and collateral consequences of the conviction have already exacted a serious punishment on Ms. Dembo.**

Section 3553(a)(2) and (3) also require the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law; and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; as well as to consider the kinds of sentences available.

Ms. Dembo's actions in this case and the resulting conviction have already exacted a terrible toll. As discussed above Ms. Dembo has lost her career, negated her graduate education, and surrendered her professional license. It is unlikely she will ever work in her chosen field again. Ms. Dembo is now and forever will be a convicted felon. While she freely admits that these are the natural consequences of actions she took, the shame she has experienced is profound as all her friends and family are aware of this case and her actions.

In addition to the surrender of her license and the loss of her career, it will be difficult for Ms. Dembo to ever find higher level alternate employment to support herself beyond the retail

jobs she is currently working.[1] And a possible loss of future employment is only one of the collateral consequences Ms. Dembo will face.  At a minimum, she has lost many of her civic rights (voting, gun ownership, limitations on foreign travel, job opportunities). She will forever bear the socially stigmatizing mark of a felon as she continues to move through life. Federal law imposes nearly 1,200 collateral consequences for convictions.[2] Convicted felons now suffer restrictions in broad ranging aspects of life that touch upon economic, political, and social rights.[3] Today, the collateral consequences of a felony conviction form a new civil death. *United States v. Nesbeth*, 188 F. Supp. 3d 179, 180 (E.D.N.Y. 2016).[4] While that may be matter of course to some of the defendants who appear before this court, the stigma of this felony and the collateral consequences it carries are absolutely mortifying to Elizabeth Dembo.

Other courts have found these factors are all appropriate considerations under the punishment considerations of §3553(a)(2). The court in *United States v. Shipley*, noted that the

---

[1] See Harry J. Holzer, Steven Raphael & Michael A. Stoll, Will Employers Hire Ex-Offenders? Employer Preferences, Background Checks, and Their Determinants, at 7-18, available at http://www.irp.wisc.edu/publications/dps/pdfs/dp124302.pdf (using empirical data to conclude private "employers reveal considerable reluctance to hiring workers with criminal histories").

[2] See Nat'l Inventory of the Collateral Consequences of Conviction, supra note 32 (narrow database search to federal law and then to controlled-substances offenses).

[3] See Nora V. Demleitner, Preventing Internal Exile: The Need for Restrictions on Collateral Sentencing Consequences, 11 Stan L. & Pol'y Rev. 153, 154 (1999); see also Labels Like 'Felon' Are an Unfair Life Sentence, N.Y. Times, at SR 10 (May 8, 2016) (discussing the stigmatizing effect of labels such as "felon," "ex-convict," and "ex-offender").

[4] *United States v. Nesbeth*, 188 F. Supp. 3d 179 (E.D.N.Y. 2016) contains an in-depth analysis of the history and scope of collateral consequences of a federal felony conviction.

stigma of the crime will follow the Defendant, and that this stigma adds to the punishment being imposed on the Defendant by the Court. 560 F. Supp. 2d 739, 745 (S.D. Iowa 2008). Being deprived of full participation in civic life due to this conviction, both through legal loss of privileges and the social stigma attached to the offense, is an additional substantial punishment that hits an individual with the background of the Defendant especially hard. *Id.* The inability to vote or serve on a jury are further reminders of the Defendant's crime that will haunt her for the rest of her life. *Id.*

- **Ms. Dembo has a high likelihood of success on probation and poses no danger to the community.**

The totality of the facts in this case shows the instant crime was situational. There is no indication that there is a risk of reoffending or that the community is in any possible danger.

   o  **Elizabeth has performed admirably on bond.**

As a predictor of her success on release into the community, and as a testament to the isolated and situation nature of her crime, Ms. Dembo has performed admirably on pre-trial release. She has not had any violations, has kept up clear communication with the pre-trial services office, has complied with reporting and travel requirements, and has appeared whenever directed. Elizabeth has been compliant with the terms of her release, which include maintaining employment and submitting negative urinalyses. Ms. Dembo is sober, stable, and working. This excellent pre-trial behavior is a solid predictor for how she will fare on supervised release.

o **Elizabeth has a very low statistical risk of recidivism.**

Ms. Dembo is a 38-year-old female, with no prior felony convictions, she has a graduate level college education, she has been employed throughout her adult life, and she was married once but is now divorced.

For all female offenders in Criminal History Category I, the recidivism rate is 10%. Offenders in her age bracket have a 12.1% rate of recidivism. For those who have been employed, the rate is 12.7%; for those with graduate level educations, the rate is 7.1%; and for those who were ever married but are now divorced, the rate is 9.8%. See U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at Exh. 9, at 28; Exh. 10, at 29 (May 2004). Undoubtedly, for those like Ms. Dembo who are educated, have been employed, and have been married the combined rate is even lower.

For all Category I defendants convicted of fraud, the recidivism rate is just 9.3%, the lowest of any offense category, which is 7.6% below the rate for all fraud offenders. Id., Exh. 11, at 30. Finally, offenders like Ms. Dembo with zero criminal history points have a rate of recidivism half that of offenders with one criminal history point. See Sent'g Comm'n, Recidivism and the "First Offender," at 13-14 (May 2004).

In imposing the least sentence sufficient to account for the need to protect the public from further crimes of Elizabeth Dembo, this Court should consider the statistically low risk of recidivism presented by Dembo's history and characteristics. See, e.g., *United States v. Darway*, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass.

2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders").

■ **Sentencing Options**

Pursuant to §5B1.1, Defendant requests a sentence of probation with a condition of community service.

o **Community service is a recommended alternative to incarceration.**

A 2005 report issued by U.S. Probation and Pretrial Services encourages the use of community service sentences as "a flexible, personalized, and humane sanction, a way for the offender to repay or restore the community.  It is practical, cost-effective, and fair, a 'win-win' proposition for everyone involved."   *See* Probation and Pretrial Services Division of the Administrative Offices of U.S. Courts, *Community Service Sentences* (2005).  According to the report, "community service addresses the traditional sentencing goals of punishment, reparation, restitution, and rehabilitation…It restricts offenders' personal liberty…allows offenders to atone or 'make the victim whole' in a constructive way [and] may be regarded as…a form of symbolic restitution when the community is the victim." *Id.*  Further, "Courts can use community service successfully with a wide spectrum of offenders: corporation and individuals, first offenders and recidivists, the indigent and the affluent, juveniles and senior citizens." *Id.*

Outside of this case, Elizabeth has no criminal history. She was employed full time, has a stable family base, has no history of violence, and poses no danger to the community. Community service in conjunction with supervision would be an appropriate alternative resolution to this matter.

    o  **Alternatively, home confinement or a minimal prison sentence will be sufficient.**

Ms. Dembo has never been imprisoned for any period before, and therefore any term of imprisonment or even home imprisonment, however short, will have a significant deterrent effect (see §3553(a)(2).

Generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration. *U.S. v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).[5] Any period of incarceration for Ms. Dembo will have a disproportionately greater deterrent effect on her than on someone who has experienced a substantial prison sentence on more than one occasion.  See *United State v. Serrano*, 2005 WL 1214314 at \*8 (S.D.N.Y. May 19, 2005) (unpublished) (because defendant had never spent more than a year incarcerated, despite minor drug convictions, any term greater than one year would achieve deterrent effect of career offender designation).

---

[5] See: *U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); see also *U.S. v. Paul*, 239 F.App'x 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); *U.S. v. Jewell*, 2009 WL 1010877 (E.D.Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender; *U.S. v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending).

■ <u>**Conclusion and Sentencing Recommendation**</u>

It is without question that Ms. Dembo's decision to fraudulently obtain prescription drugs represented a criminally poor series of choices, but those choices must be viewed in the context of what appears to be an otherwise productive life. Worth noting is that Ms. Dembo is not seeking a downward variance or a departure - a probationary sentence, especially one accompanied by community service, restitution, and supervised release, is explicitly authorized by the Guidelines and is a within-Guidelines sentence.

A Guidelines-authorized sentence of community service and supervised release appropriately acknowledges the sentencing considerations of 18 U.S.C. §3553(a). The collateral consequences of this conviction have had and will forever continue to have a lasting impact on Ms. Dembo's life: she is now a convicted felon, she has lost her job and career. She is disgraced.

Defendant respectfully suggests to the Court that an appropriate sentence in this matter should be probation with the condition of a period of community service (as determined appropriate by the Court), and/or a one-year period of supervised release with appropriate conditions.

WHEREFORE, after considering the factors in §3553(a), Defendant respectfully requests that the Court:

a) Sentence the Defendant to probation or one-year of supervised release with conditions of community service.

   a. Alternatively, sentence the defendant to a period of home confinement or a minimal period of incarceration.

And for such further relief as the Court may deem just and proper in the premises.

Respectfully submitted,

NEWTON BARTH, L.L.P.

By:    /s/ Talmage E. Newton IV
        Talmage E. Newton IV, MO56647
        talmage@newtonbarth.com
        555 Washington Ave., Suite 420
        St. Louis, Missouri 63101
        (314) 272-4490 – Telephone
        (314) 762-6710 – Facsimile

        Attorney for Defendant Dembo

## Index of Sentencing Letters

| | |
|---|---|
| Exhibit A | Letter from Susan Michael |
| Exhibit B | Letter from Sandy Sudd |
| Exhibit C | Letter from Lyle Croft |
| Exhibit D | Letter from Mike & Christie Wright |
| Exhibit E | Letter from Phil Dembo |
| Exhibit F | Letter from Kelly Purko |
| Exhibit G | Letter from Kathy Reed |

## Certificate of Service

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing served upon counsel for the United States, along with all exhibits, on this 10th day of March, 2022. Because the attached letters are redacted, unredacted versions have been sent to the United States.

        /s/ T. Newton